IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

JUL 2 4 2026

FILED

LAKISHA D. HEATLEY,          *
                             *
       Plaintiff,            *
                             *
          v.                 *          CV 124-137
                             *
DOCTORS HOSPITAL OF AUGUSTA  *
and HCA HEALTHCARE, INC.,    *
                             *
       Defendants.           *
                             *

_____

**O R D E R**

_____

Before the Court is Defendants' motion for summary judgment (Doc. 25). For the following reasons, Defendants' motion is **GRANTED**.

## I. BACKGROUND

On August 20, 2024, Plaintiff filed a complaint for employment discrimination against Defendants alleging violations of Title VII of the Civil Rights Act of 1964 and age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"). (Doc. 1, at 3.) Plaintiff "is Black and over 40," and "has worked in the vascular lab at the Doctors Hospital of Augusta since October of 2010." (Doc. 25-2, at 1.) She is a "PRN," meaning she is on-call as needed, and she does not have a guaranteed schedule of working hours. (Id.) Plaintiff usually works approximately twenty-five

hours every two-week pay period and covers "call" one night a week, meaning she may be called in by the hospital to perform a study or an exam ordered by a physician. (Id. at 2.) Plaintiff has received two disciplinary actions for violating the "On-Call Pay Policy," which requires employees that are in an "eligible On-Call work arrangement" to report to the hospital within thirty minutes of being called to work. (Id.) On October 5, 2023, Plaintiff received a written disciplinary action for reporting to the hospital over an hour and a half after being called in. (Id.) Plaintiff then refused to sign her October 2023 disciplinary action because she believed the policy had changed. (Id. at 2-3.)

Plaintiff also received multiple patient complaints for poor bedside manner starting in 2019 and performance review feedback indicating that she should "continue to work on her interdepartmental personal skills" and work to develop positive coworker relationships. (Id. at 3.) Plaintiff believes her performance reviews were "racially charged" and admits to having a history of complaints about her interpersonal skills. (Id. at 4.)

Additionally, Plaintiff applied twice for full-time positions at Doctors Hospital of Augusta as a Vascular Technician. (Id.) In 2016, a white woman who was twenty-eight years old was hired over Plaintiff, and in 2023, a black woman who was twenty-five years old was selected over Plaintiff. (Id.) Nicholas Lynn, the

2

supervisor hiring in 2023, made his decision not to hire Plaintiff partly due to her disciplinary writeup while on call and history of patient complaints. (Id. at 4-5.)

In 2022 and 2023, Plaintiff complained of discrimination by Malissa Lanier, a non-supervisory employee within the lab. (Id.) On February 13, 2024, Plaintiff filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. at 5.) Plaintiff alleged she experienced retaliation because sometimes the day the work schedule was set for PRN employees was changed, she was paid late once, she received counseling for her lack of efficiency at work, her name was left off an email sent to employees, and the department now has staff meetings because she made a complaint. (Id. at 5-6.) Plaintiff asserted religious discrimination claims because she is a Jehovah's Witness and does not celebrate holidays, but there were Christmas decorations in the lab and hospital, and she found a Christmas ornament hanging off a machine she regularly used but was not assigned to. (Id. at 6-7.) Plaintiff testified that she believed a video of Christmas lights that was sent to a work group text by Mr. Lynn was discriminatory because of her religious objection to holidays. (Id. at 7.) The group message often contained personal messages about holidays and birthdays. (Id.)

On August 20, 2024, Plaintiff filed suit against Defendants. (Doc. 1.) On September 22, 2025, Defendants moved for summary

3

judgment on all of Plaintiff's claims.  (Doc. 25.)  Plaintiff did not respond.  The motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).  The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted).  The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the

4

non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala., 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The non-movant must tailor its response to the method by which the movant carries its initial burden. Fitzpatrick, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v.

5

Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).  Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

Even where, as here, a motion for summary judgment is unopposed and the movant's statement of material facts is deemed admitted, the district court must still consider the merits of the motion and review the movant's citations to the record "to determine if there is . . . no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted); see also United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004); see L.R. 7.5, SDGa. ("Failure to respond [to a motion] within the applicable time period shall indicate that there is no opposition to a motion."); L.R. 56.1, SDGa. ("Each statement of material fact shall be supported by a citation to the record.  All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.").  The presence of any genuine issue of material fact renders summary judgment inappropriate.  5800 SW 74th Ave., 363 F.3d at 1101.

In this action, the Clerk of Court provided Plaintiff with notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default.  (Doc. 27.)  For that reason, the notice requirements

of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.

### III. DISCUSSION

The Court notes from the outset that Defendants' motion is unopposed, so their statement of material facts is deemed admitted by Plaintiff. (Doc. 25-2.)

**A. Failure to Hire under Title VII**

Defendants move for summary judgment on Plaintiff's failure to hire claims, arguing (1) any claim for her 2016 application is time-barred; and (2) she cannot make out a prima facie case for a failure to hire claim because in 2023, an individual of the same race was hired and she cannot show that Defendants' reasoning is pretext for race discrimination. (Doc. 25-1, at 6-8.)

1. <u>2016 Application</u>

A plaintiff may only pursue a Title VII discrimination claim after exhausting her administrative remedies. <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001) (citation omitted). To exhaust, a plaintiff must file a timely charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e). In a non-deferral state, such as Georgia,[1] a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged

---

[1] The Eleventh Circuit has recognized Georgia is a non-deferral state. <u>See</u> <u>Watson v. Blue Circle, Inc.</u>, 324 F.3d 1252, 1258 (11th Cir. 2003); <u>Wilkerson</u>, 270 F.3d at 1317.

2. 2023 Application

In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class.

E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002) (citation omitted).   If Plaintiff establishes a prima facie case, the employer then has the burden to articulate a legitimate nondiscriminatory reason for the employment decision. McDonnell Douglas Corp. v. Greene, 411 U.S. 792, 802-03 (1973). "Once an employer articulates a legitimate non-discriminatory reason, the plaintiff, in order to survive a motion for summary judgment, must show that the proffered reason was a pretext for discrimination."   McCaslin v. Birmingham Museum of Art, 384 F. App'x 871, 874 (11th Cir. 2010) (citing Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 255-56 (1981)).

Defendants argue Plaintiff's 2023 claim fails because she cannot show the position was filled by another person outside of her protected class.  (Doc. 25-1, at 7.)  Plaintiff applied for a full-time technician position in August 2023 and was not hired. (Doc. 25-2, at 4.)  Mercedes Holmes, "who [was] [twenty-five] and Black," was hired instead.  (Id.)  The Court finds that Plaintiff does not bring evidence that a person outside of her protected

9

discrimination.  29 C.F.R. § 1626.7(a); Hipp v. Liberty Nat'l Life Ins., 252 F.3d 1208, 1214 n.2 (11th Cir. 2001).  A failure to hire is considered a "discrete act" that triggers the 180-day period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002). In the Eleventh Circuit, the 180-day limitations period begins to run from the date "the employee knows or reasonably should know that he or she has been discriminated against."  Hill v. Metro Atlanta Rapid Transit Auth., 841 F.2d 1533, 1545 (11th Cir. 1988); Stafford v. Muscogee Cnty. Bd. of Educ., 688 F.2d 1383, 1388 (11th Cir. 1982) (limitations period began to run from date the plaintiff knew he was not hired).

The limitations period for Plaintiff to file a charge with the EEOC began in 2016 when she discovered the Vascular Technician position was filled by someone outside her protected class. Although Plaintiff fails to provide evidence of when she discovered the position was filled by Amanda Hartsock, she does acknowledge that Ms. Hartsock was hired "the first time [Plaintiff] applied" for the full-time position, and the unopposed statement of material facts provides Plaintiff applied in 2016.  (Doc. 1, at 7; Doc. 25-2, at 4.)  Accordingly, the deadline for Plaintiff to have filed a charge with the EEOC was, at the latest, sometime in 2017, and she did not submit her charge until February 13, 2024.  Therefore, Plaintiff's Title VII claim relating to her 2016 application is barred for failure to exhaust administrative remedies.

8

class was hired over her.  As such, Plaintiff fails to show race-based failure to hire and there is no genuine issue of material fact.

The Court notes Plaintiff also fails to put forth evidence that Defendants' nondiscriminatory reasons for not hiring her were pretextual.  Defendants explained that the decision to hire another individual was partly due to Plaintiff's record of patient complaints and negative interactions with coworkers.  (Id.) Plaintiff did not provide any evidence that Defendants' reasoning and intent was discriminatory.  Thus, Defendants' motion for summary judgment as to Plaintiff's failure to hire claims is **GRANTED**.

**B. Hostile Work Environment on Basis of Religion Under Title VII**

Defendants argue Plaintiff fails to prove a prima facie case of hostile work environment under Title VII because she cannot prove the allegedly discriminatory actions were directed at her, nor that the conduct interfered with her work "in a continuous or pervasive way."  (Doc. 25-1, at 11.)

To establish a hostile work environment claim under Title VII, Plaintiff must show "(1) [s]he belongs to a protected group; (2) [s]he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment; and (5) the employer was responsible for the hostile

10

work environment." Copeland v. Ga. Dept. of Corr., 97 F.4th 766, 774 (11th Cir. 2024) (citations and quotation marks omitted). Defendants mainly contest the second and fourth elements. (Doc. 25-1, at 9-11.) In evaluating the objective severity of the harassment, Courts consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).

The Court finds Plaintiff fails to bring evidence that she experienced severe or pervasive harassment that affected her conditions of employment. Plaintiff originally testified that she had not informed her supervisor, Mr. Lynn, about her religious beliefs, but later amended her testimony to say that she did. (Doc. 25-2, at 7.) The unopposed statement of material facts indicates that Plaintiff found a Christmas ornament on a machine that she used, there were Christmas decorations within the lab, and a video of Christmas lights was shared by Mr. Lynn in an employee group text message. (Id. at 6-7.) Mr. Lynn claimed he did not mean it as a discriminatory act toward Plaintiff. (Id. at 7.) The Court finds these sparing and general instances of employees acknowledging a holiday in the workplace do not rise to

11

the high level of severity required to support a hostile work environment claim.

Under the Miller factors, the conduct was infrequent, as Plaintiff only addressed instances during Christmas time. 277 F.3d at 1276. The severity of the conduct was minimal and not shown to be directed at Plaintiff, as there were Christmas decorations generally placed in hospital areas and an employee group text message about Christmas decorations was sent. The conduct was neither physically threatening, humiliating, nor an offensive utterance, as the mere presence of decorations is not threatening or insulting. Plaintiff did not put forth evidence that she was forced to celebrate any holidays — the behavior she states her religion prohibits. (Doc. 25-2, at 7.) Lastly, the conduct has not been shown to unreasonably interfere with Plaintiff's job performance. The presence of Christmas decorations and a video showing holiday lights in no way substantially interfered with Plaintiff's job tasks as a PRN. She was not prohibited from doing her job at any point, nor was she made to do something against her religion to perform her job or remain employed. There is no evidence to the contrary. As a result, the conduct does not show severity under the Miller factors, and the fourth element of Plaintiff's hostile work environment claim is not met.

12

Plaintiff fails to bring evidence of a hostile work environment under Title VII. As a result, there is no genuine issue of material fact such that a reasonable factfinder could find for Plaintiff, and Defendants' motion for summary judgment as to this claim is **GRANTED**.

## C. Age Discrimination under ADEA

Defendants argue that although Plaintiff can establish a prima facie case of age discrimination, her claim nonetheless fails because she has not shown that: (1) the legitimate reasons not to hire her were pretext, and (2) age is the but-for cause of Defendants' choice to hire a different candidate. (Doc. 25-1, at 12.)

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). "A plaintiff may establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (citation omitted); Collins v. Compass Grp., Inc., 965 F. Supp. 2d 1321, 1333 (N.D. Ala. 2013) ("A plaintiff may establish a prima facie case of age discrimination by (1)

13

providing direct evidence of discriminatory intent by the defendant, (2) presenting statistical proof of a pattern of discrimination by the defendant, or (3) providing other circumstantial evidence.").

When a plaintiff relies on circumstantial evidence to prove discrimination under the ADEA, courts employ the McDonnell-Douglas burden-shifting framework. Chapman, 229 F.3d at 1024. Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. A plaintiff may do so by showing that she was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual. Id.

If a plaintiff successfully establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1227 (11th Cir. 1993). This intermediate burden is "exceedingly light," and once the employer offers an explanation, "the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate." Ward v. Gulfstream Aerospace Corp., 894 F. Supp. 1573, 1578 (S.D. Ga. 1995) (citing Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994)).

14

Defendants argue that although Plaintiff can establish a prima facie case of age discrimination, they articulated legitimate reasons for why she was not selected to fill the technician position and Plaintiff has not provided evidence that Defendants' reasons were pretextual. (Doc. 25-1, at 12.) The Court agrees. Defendants provided that the decision to hire someone other than Plaintiff was due to Plaintiff's disciplinary writeups, patient complaints, and negative interactions with coworkers. (Doc. 25-2, at 4-5.) As to summary judgment, a plaintiff must introduce probative evidence that the asserted reasons for a defendant's failure to hire her are merely pretext for discrimination. See Dyals v. Gregory, No. 212-cv-207, 2014 WL 4629106, at *6 (S.D. Ga. Sept. 15, 2014). "The burden of proving pretext . . . can be met by showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." Clark, 990 F.2d at 1228. Plaintiff has not proven that Defendants' proffered reasons were pretextual and thus fails to show that Defendants intended to discriminate against her.

Finally, the Eleventh Circuit has held "that summary judgment should not be granted for failure to demonstrate pretext unless it also 'reflects a failure to put forward enough evidence for a jury to find for the plaintiff on the ultimate question of discrimination.'" Ismael v. Roundtree, 161 F.4th 752, 763 (11th

15

Cir. 2025) (citation omitted).  Because Plaintiff has not provided evidence to support her ADEA claim, the Court holds a jury could not find for her on the question of discrimination.

Based on the above, the Court finds there is no genuine issue of material fact where a reasonable factfinder could find for Plaintiff, and Defendants' motion for summary judgment as to the age discrimination claim is **GRANTED**.

## D. Retaliation Under ADEA and Title VII

Defendants argue that Plaintiff has not established a retaliation claim under either Title VII or the ADEA because she did not allege she suffered an adverse employment action other than one late paycheck, which has been found to not be an adverse employment action in the retaliation claim context.  (Doc. 25-1, at 14-15.)

Under Title VII, it is unlawful to retaliate against an employee for opposing an unlawful employment practice.  42 U.S.C. § 2000e-3.  A Title VII retaliation claim requires an employee to prove: "(1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events."  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam) (citation omitted).  The McDonnell Douglas burden-shifting framework also applies to Title VII retaliation claims, and the employer has the opportunity to articulate legitimate, non-

retaliatory reasons for its actions. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). If the employer does so, then the employee must offer evidence to rebut those reasons and show pretext. Id. Retaliation under the ADEA involves the same elements. Cardelle v. Miami Beach Fraternal Ord. of Police, 593 F. App'x 898, 903 (11th Cir. 2014) (citation omitted) ("The elements necessary to establish a prima facie case of ADEA . . . retaliation are: 1) the plaintiff engaged in ADEA protected expression; 2) the plaintiff suffered an adverse employment action; and 3) the adverse action was causally related to the protected expression.").

Defendants argue Plaintiff's claims fail because adverse employment actions "affect continued employment or pay," and the only incident Plaintiff alleges that fits this definition is the single late paycheck. (Doc. 25-1, at 14.) Further, Defendants argue that one late paycheck has not been found to be an adverse employment action, and Plaintiff admitted that the hospital changed to a new payment system that potentially glitched when the delayed payment occurred. (Id.) The Court again agrees with Defendants. Plaintiff's list of allegedly retaliatory events, such as another employee working weekend shifts that Plaintiff normally works, a change in the PRN shift scheduling process, and exclusion from one work email, do not constitute adverse employment actions. See Monaghan v. Worldpay US, Inc., 955 F.3d 855, 860

17

(11th Cir. 2020) (citation omitted) ("[Adverse] employment actions consist of things that affect continued employment or pay — things like terminations, demotions, suspensions without pay, or pay raises or cuts."). The Court does not find that a solitary late paycheck, that Plaintiff eventually received, is an adverse employment action in support of a retaliation claim. Plaintiff does not prove she experienced a termination, demotion, or any other employment-affecting events.

Given the above, Plaintiff's retaliation claims under Title VII or the ADEA do not survive Defendants' motion for summary judgment, and Defendants' motion is **GRANTED** as to these claims.

## IV.  CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (Doc. 25) is **GRANTED.** The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants, **TERMINATE** all pending motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of July, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

18